Filed 9/22/25  In re Timberlake on Habeas Corpus CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re<br><br>PAUL E. TIMBERLAKE<br><br>On Habeas Corpus. | F089812<br><br>(Super. Ct. No. BF158240A)<br><br>Kern County |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.

Fay Arfa for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Respondent

-ooOoo-

In 2016, after he shot and killed a gang rival, petitioner Paul E. Timberlake was convicted by a jury of second degree murder, being a felon in possession of a firearm, carrying a loaded firearm as an active participant in a criminal street gang, and actively participating in a criminal street gang.  The jury also found true a gang enhancement allegation as to the felon in possession count, among other allegations.

On direct appeal, we upheld his convictions but remanded this matter for the court to consider striking firearm enhancements under newly enacted legislation.  The trial

court declined to strike the enhancements on remand, and Timberlake appealed from that decision. We affirmed in an opinion issued in January 2022.

In January 2023, Timberlake filed a petition for a writ of habeas corpus in this court. In March 2024, we granted Timberlake relief on one of his claims. We held that Penal Code[1] section 186.22, created by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (AB 333), retroactively applied to him and required reversal of the gang enhancement finding and the gang participation conviction. AB 333, which took effect on January 1, 2022, significantly changed the necessary elements to establish a criminal street gang for purposes of section 186.22.

In April 2024, Timberlake petitioned the California Supreme Court for a writ of habeas corpus asserting three claims. He contended that AB 333 required reversal not only of the gang enhancement finding and the gang participation conviction, but also of his conviction of carrying a loaded firearm as an active participant in a gang. He also contended that AB 333 requires reversal of his murder conviction, and that he was denied due process and a fair trial by the admission of "irrelevant and inflammatory gang videos and lyrics" at his trial. The Supreme Court issued to respondent, the Secretary of the Department of Corrections and Rehabilitation, an order to show cause, returnable before this court, why Timberlake should not be granted relief on the ground his conviction of carrying a loaded firearm as an active participant in a gang must be reversed under AB 333.

Respondent concedes in his return that Timberlake is entitled to relief on his conviction for carrying a loaded firearm as an active participant in a gang under the California Supreme Court's decision in *People v. Lopez* (2025) 17 Cal.5th 388 (*Lopez*). Respondent asserts that the conviction must be reversed but that the prosecution should

---

[1] Undesignated statutory references are to the Penal Code.

be permitted to retry that count. Timberlake, in his traverse, notes respondent's concession and also argues his murder conviction should be reversed.

We accept respondent's concession and grant Timberlake relief on his claim regarding his conviction for carrying a loaded firearm as an active participant in a gang. We order that conviction reversed, but the prosecution may elect to retry that count. Timberlake's other claim regarding his murder conviction is denied.

## BACKGROUND

### I.     The crimes

We reproduce the summary of facts from our opinion in Timberlake's first direct appeal, *People v. Timberlake* (Aug. 22, 2018, F073543) [nonpub. opn.] 2018 WL 4002008 (*Timberlake I*).

> On the evening of November 7, 2014, Timberlake and his friend, Donnell Robinson, a Country Boy Crip, went to a "fish fry" and to have a couple of drinks at a friend's house. Later, Timberlake and Robinson went to purchase more alcohol and then headed to Martini's, a bar adjoining a bowling alley in Bakersfield.
>
> At Martini's, Timberlake and Robinson socialized in the parking lot with other members of the Country Boy Crips. Also in the parking lot were members of a rival gang, the Eastside Crips.
>
> Shortly before 10:30 p.m., a red Infiniti, driven by Eastside Crip Lionell McGee, stopped in the parking lot near Robinson's vehicle. Timberlake noticed the red Infiniti and thought it was unusual because it was parked laterally across the front of several parking spaces instead of in the parking space. After McGee got out of the Infiniti, Timberlake approached him from the rear of the car. According to Timberlake, McGee was not smiling and put his hand into his left jacket pocket. Timberlake pulled out a gun and shot McGee three times.
>
> As Timberlake was running back to Robinson's vehicle, he was shot in the back. Robinson drove Timberlake to the hospital for treatment.
>
> Police Officer Jess Beagley and other officers responded to a chaotic scene at Martini's. Fifty to sixty people were milling about in the parking

lot and cars were leaving. Officer Beagley found McGee dead on the ground. McGee had entry and exit wounds in the center of his chest, as well as a gunshot wound to the front of his head. Three vehicles in the parking lot, including the red Infiniti, and the wall of a neighboring motel had evident bullet strikes.

Law enforcement obtained a surveillance video depicting the shooting from a camera positioned on the southwest corner of a nearby motel. The video was admitted as People's Exhibit 35 and played for the jury.

Timberlake testified on his own behalf. He admitted shooting McGee, but claimed he did so in self-defense. He threw the gun into a dumpster across the street before going to the hospital to have his own gunshot wounds treated. Timberlake's recorded police interview, in which he denied shooting McGee, was admitted as People's Exhibit 46 and played for the jury.

Timberlake admitted having associated with the Country Boy Crips, admitted being a gang member at the time of his 2007 conviction for drug sales, but testified he dropped out of the gang on his release from prison in 2009. Although he claimed he was no longer a Country Boy Crip when he shot McGee, he admitted he still carried a gun for protection because of his past association with the gang.

Timberlake acknowledged making the rap videos shown at trial in 2013 and 2014. He also admitted having 100 tattoos, but claimed only five or six were gang related and those were "over ten years old."

## II.  Trial court proceedings

A jury convicted Timberlake of second degree murder (§ 187, subd. (a); count 1), felon in possession of a firearm (§ 29800, subd. (a)(1); count 2), carrying a loaded firearm as an active participant in a criminal street gang (§ 25850, subd. (c)(3); count 3), and being an active participant in a criminal street gang (§ 186.22, subd. (a); count 4). The jury found not true as to count 1, but true as to count 2, that the offense was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and it found true, as to all counts, personal firearm use enhancements (§§ 12022.5, subd. (a), 12022.53, subd. (d)). Additionally, in a bifurcated proceeding, the

4.

trial court found Timberlake had suffered two prior strike convictions within the meaning of the Three Strikes law (§ 667, subd. (c)–(j)), two prior serious felony convictions (§ 667, subd. (a)(1)), and that he had served two prior prison terms (§ 667.5, subd. (b)).

The trial court sentenced Timberlake to a total term of 65 years to life as follows: on count 1, 15 years to life, doubled because of the prior strikes, plus 25 years to life for the associated firearm enhancement (§ 12022.53, subd. (d)), plus two five-year terms for the prior serious felony enhancements (§ 667, subd. (a)). The court imposed but stayed life terms on counts 2, 3, and 4 under section 654.

## III. Postconviction proceedings

### A. Direct appeals

In April 2016, Timberlake appealed. He argued that the trial court erroneously admitted gang related testimonial hearsay in violation of *People v. Sanchez* (2016) 63 Cal.4th 665, and that his murder conviction was prejudiced by that inadmissible testimonial hearsay. (*Timberlake I, supra,* 2018 WL 4002008, at p. 1.) In August 2018, this court affirmed Timberlake's convictions but remanded the matter for the trial court to exercise its discretion to strike enhancements under sections 12022.53, subdivision (h), and 12022.5, subdivision (c). (*Timberlake I*, at pp. 1, 10.)

In November 2020, the trial court declined to strike Timberlake's firearm enhancement (§ 12022.53, subd. (d)) or strike his prior serious felony enhancements (§ 667, subd. (a)(1).) On November 24, 2020, Timberlake appealed the trial court's decision. On appeal, appointed counsel raised no issues and requested that this court review the record independently under *People v. Wende* (1979) 25 Cal.3d 436. (*People v. Timberlake* (Jan. 6, 2022, F082097) [nonpub. opn.] 2022 WL 55545 at p. 2 (*Timberlake II*).) On January 6, 2022, this court affirmed the judgment after finding no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to Timberlake. (*Timberlake II*, at pp. 2–3.)

5.

## B. Prior habeas proceeding

On January 24, 2023, Timberlake petitioned this court for a writ of habeas corpus, asserting four claims. (*In re Timberlake* (Mar. 13, 2024, F085601) [nonpub. opn.] 2024 WL 1085459 at p. 3 (*Timberlake III*).) His first claim, as we understood it, was that the amendments to section 186.22 created by AB 333, which took effect January 1, 2022,[2] retroactively applied to him and required reversal of the gang enhancement finding and the gang participation conviction. (*Timberlake III*, at p. 3.) To prove the existence of a criminal street gang itself, section 186.22, subdivision (f), requires proof of "a pattern of criminal gang activity." (§ 186.22, subd. (f).) AB 333 changed what constitutes such a pattern. (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477–478.) Timberlake contended that the evidence presented at trial did not prove a pattern of criminal gang activity under the new definition. (*Timberlake III*, at pp. 5–6.)

As to this first claim for relief, the Attorney General argued that AB 333 did not apply retroactively to Timberlake because his convictions were final before AB 333's enactment. (*Timberlake III*, at p. 3.) But the Attorney General conceded that if this court determined AB 333 applied to Timberlake, his gang participation conviction and gang enhancement finding must be reversed. (*Ibid.*)

Second, Timberlake argued section 186.22 rendered some evidence inadmissible and required reversal of his murder conviction. (*Timberlake III*, at p. 6.) Third, as an alternative to his first claim, he asserted the gang enhancement finding and the gang participation conviction must be reversed under *People v. Valencia* (2021) 11 Cal.5th 818 (*Valencia*). (*Timberlake III*, at p. 1.) And fourth, he contended his prior appellate counsel provided ineffective assistance by failing to challenge the trial court's admission

---

[2] AB 333 took effect five days before Timberlake's January 6, 2022, resentencing hearing. (Stats. 2021, ch. 669, §§ 3–4, eff. Jan. 1, 2022.)

of rap music videos and lyrics at trial. (*Id.* at p. 7.) We issued an order to show cause on July 3, 2023. (*Id.* at p. 3.)

In an opinion issued March 13, 2024, we agreed with Timberlake's first claim and granted him relief as to that claim. (*Timberlake III*, at pp. 1, 8.) We accordingly reversed the gang enhancement finding and the gang participation conviction and ordered that the prosecution be permitted to retry them. (*Id.* at p. 8.) Since we granted relief on this claim, Timberlake's third claim was rendered moot as it sought the same relief. We rejected Timberlake's second claim because revised section 186.22 does not ban evidence of the reputational benefit of a charged offense to prove motive. (*Id.* at p. 6.) We rejected Timberlake's fourth claim regarding the music evidence and ineffective assistance as untimely. (*Id.* at p. 7.)

## C. Instant habeas petition

### 1. The petition, informal response, and reply

On April 22, 2024, Timberlake petitioned the California Supreme Court for a writ of habeas corpus, asserting three claims. First, he contended, as he did in his prior petition, that AB 333 requires reversal of the murder conviction and that this court erred in determining gang evidence was admissible to prove the motive of the shooting. Second, he contended, also as in his prior petition, that his prior appellate counsel was ineffective for failing to challenge the admission of the rap music videos and lyrics at trial. And third, he contended that AB 333's retroactive application required reversal not only of the gang enhancement finding and gang participation conviction, but also of his conviction for carrying a loaded firearm as an active participant in a gang. As to the third claim, he asserted this court "overlooked" that the carrying a loaded firearm conviction should have been reversed for the same reason the two other items were reversed.[3]

---

[3] The statute criminalizing the carrying of a loaded firearm by an active participant in a criminal street gang defines "criminal street gang" by referring to section 186.22, subdivision (a). (§ 25850, subd. (c)(3).)

The Supreme Court directed the Attorney General to file an informal response to Timberlake's petition, specifically asking the Attorney General to address Timberlake's third claim. The Attorney General argued the claim was procedurally barred because it was untimely, successive, and could have been presented during direct appeal. The Attorney General also argued that, even if not procedurally barred, the claim fails because the "guilt aspect" of Timberlake's judgment was final for *Estrada*[4] purposes when AB 333 became effective.

Timberlake, in his reply to the Attorney General's informal response, disputed the Attorney General's procedural challenges and maintained his position that AB 333 applied retroactively to him.

### 2. *Supreme Court's order to show cause and subsequent filings*

On May 14, 2025, the Supreme Court issued to respondent an order to show cause, returnable before this court, "why relief should not be granted on the ground [Timberlake's] conviction of carrying a loaded firearm as an active participant in a criminal street gang (Pen. Code, § 25850, subd. (c)(3)) must be reversed pursuant to Assembly Bill No. 333."

Respondent in his return conceded that Timberlake was entitled to relief specified in the OSC under the Supreme Court's recent holding in *Lopez, supra,* 17 Cal.5th 388. The Supreme Court in *Lopez* held that "a criminal case in which a sentence is not yet final, including one in which an appellate court has affirmed the conviction and remanded for reconsideration of sentencing-related issues, is not final for purposes of *Estrada*, and the benefits of supervening ameliorative legislation apply retroactively." (*Lopez*, at pp. 392–393.) Respondent recognizes that AB 333 took effect January 1, 2022, six days

---

**4** Under *In re Estrada* (1965) 63 Cal.2d 740, absent " 'a contrary indication of legislative intent, … legislation that ameliorates punishment … applies to all cases that are not yet final as of [its] effective date.' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207.)

before this court affirmed Timberlake's judgment on direct appeal on January 6, 2022. Thus, the Attorney General concedes that under *Lopez*'s holding, AB 333 applies to Timberlake's case because his judgment was not final on direct appeal when AB 333 took effect. He accordingly concedes that Timberlake should be granted relief on the sole ground contained in the Supreme Court's order to show cause, which requires reversal of the conviction for carrying a loaded firearm as an active participant in a criminal street gang. He maintains the prosecution should be permitted to retry that count.

We issued an order allowing Timberlake to file a traverse to respondent's return. In his traverse, the Argument section of which fills only a single page, Timberlake acknowledges respondent's concession and agrees that the prosecution should be permitted to retry the carrying a loaded firearm as an active participant in a gang count. He also states that his murder conviction should be reversed because "[t]he gang evidence pervaded his entire trial" and prejudiced him because "but for the faulty gang instructions" he would have been acquitted of all charges.

## DISCUSSION

We accept respondent's concession as to the sole ground stated in the Supreme Court's order to show cause; mainly, that Timberlake's conviction in count 3 for carrying a loaded firearm as an active participant in a criminal street gang must be reversed under AB 333. This conclusion is compelled by the Supreme Court's holding in *Lopez, supra,* 17 Cal.5th 388. The parties are also correct that the prosecution should be permitted to retry this count.

That said, we reject Timberlake's second claim asserted in his traverse that his murder conviction must also be reversed. This is because that claim was not included in the Supreme Court's order to show cause. "In a proceeding in habeas corpus, the petitioner bears the 'burden … of alleging … the facts on which he relies in support of his claim [or claims] for relief.' [Citation.] He also 'bears the burden of proving [those]

9.

facts … by a preponderance of the evidence.' " (*In re Sassounian* (1995) 9 Cal.4th 535, 547.) "In issuing an order to show cause in such a proceeding, a court makes 'an implicit preliminary determination' as to claims *within the order* that the petitioner has carried his burden of allegation, that is, that he 'has made a sufficient prima facie statement of specific facts which, if established, entitle him to … relief[.]' [Citation.] That determination, it must be emphasized, is truly 'preliminary': it is only initial and tentative, and not final and binding. In issuing the order to show cause, the court also makes 'an implicit determination' as to claims *outside the order* that the petitioner has failed to carry his burden of allegation, that is, that he has 'failed to make a prima facie case[.]' [Citation.] That determination is not preliminary. It may, of course, be changed. But unless changed, it stands." (*Ibid*; see also *People v. Bloyd* (1987) 43 Cal.3d 333, 362–363 [issuance of order to show cause on a specific issue is an implicit determination that a prima facie case has not been made as to remaining issues].)

The Supreme Court has never amended its order to show cause, nor did we issue an order to show cause of our own as to other claims. Thus, we reject Timberlake's claim regarding his murder conviction as well as any other claims he may wish to assert in this proceeding.

## DISPOSITION

Relief is granted on the ground that Timberlake's conviction for carrying a loaded firearm as an active participant in a criminal street gang (§ 25850, subd. (c)(3); count 3) must be reversed under AB 333. Accordingly, that conviction is reversed and the matter is remanded for further proceedings. On remand, the prosecution shall have the option to retry that count, along with the previously reversed gang participation count (§ 186.22,

subd. (a); count 4) and the gang enhancement allegation (§ 186.22, subd. (b)(1)). All other claims for relief are denied.


                                             SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

11.